**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Chapter 11 |
| THE ASPEN STREET CORPORATION | : | |
| | : | |
| Debtor(s) | : | |
| | : | |
| | : | |
| | : | Bky. No. 07-10858ELF |
| | : | |

# M E M O R A N D U M

## I. INTRODUCTION

Presently before the court in this chapter 11 case is the Motion of The Aspen Street Corporation ("the Debtor") to Set the Claim of Sovereign Bank, N.A. ("Sovereign") and Determine the Amount of the Monthly Payments ("the Motion"). The Debtor filed the Motion on January 9, 2009, approximately two (2) weeks after an order was entered confirming its plan of reorganization. The terms of that plan require the Debtor to satisfy Sovereign's allowed secured claim by making monthly instalment payments for twenty-four (24) months following the effective date of the confirmed plan, after which the Debtor must pay off the remaining indebtedness with a balloon payment.

The Motion's title is a misnomer. While it suggests that the court is being asked to determine "the amount" of Sovereign's claim and "the amount" of the post-confirmation instalment the Debtor is obliged to pay in the twenty-four (24) months following the effective date of the confirmed plan, the Debtor actually requests that the court resolve a much narrower question. That question may be stated as follows: Does the Debtor's confirmed plan preclude

1

Sovereign from adding postpetition attorney's fees and late charges to the Debtor's prepetition indebtedness in calculating its allowed secured claim?  <u>See</u> generally 11 U.S.C. §506(b).[1]

The Debtor contends that: (1) its confirmed plan modifies and partly overrides Sovereign's rights under 11 U.S.C. §506(b) by excluding postpetition attorneys' fees and postpetition late charges from Sovereign's allowed secured claim and (2) pursuant to 11 U.S.C. §1141(a), Sovereign is bound by the confirmed plan's treatment of its secured claim.[2]  Sovereign asserts that the Debtor's plan provisions concerning Sovereign's claim are ambiguous, contradictory and do not (and should not be read to) override Sovereign's §506(b) entitlement to postpetition attorney's fees and late charges.

The court held an evidentiary hearing on the Motion on March 9, 2009.  Counsel for the Debtor and counsel for Sovereign testified at the hearing and a number of exhibits were introduced into evidence.  The Debtor and Sovereign filed post-hearing memoranda on March 26, 2009 and March 27, 2009 respectively.  The matter is now ready for decision.

For the reasons stated below, I conclude that Sovereign is not entitled to include §506(b) postpetition attorney's fees and late charges in its allowed secured claim.

---

[1] Section 506(b) provides, in pertinent part:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

[2] In disputing Sovereign's claim that it is entitled to postpetition attorney's fees and late charges, the Debtor relies exclusively on the argument that the binding, confirmed plan trumps Sovereign's §506(b) rights.  Thus, I will assume that, absent a binding plan provision to the contrary, Sovereign is entitled to assess the disputed charges under 11 U.S.C. §506(b).

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A.

The Debtor commenced this chapter 11 case on February 9, 2007.[3] In the twenty-two (22) month period between the filing of the case and the entry of the confirmation order, the Debtor filed five (5) proposed chapter 11 plans.[4] The final proposed plan, ultimately confirmed, was the Debtor's Fourth Amended Plan of Reorganization ("the Confirmed Plan" or "the Plan"), filed on July 10, 2008.

On September 5, 2008, Sovereign filed an objection ("the Objection") to confirmation of the Fourth Amended Plan (i.e., what became the Confirmed Plan). See Docket Entry No. 217. In the Objection, Sovereign asserted that the Plan could not be confirmed under 11 U.S.C. §1129(a) asserting that:

1. the Plan was not feasible, see id. §1129(a)(11);

2. the Plan did not provide for Sovereign to receive as much as it would receive in a chapter 7 liquidation, see id. §1129(a)(7); and

3. Sovereign, the only class 2 creditor, had voted to reject the Plan and therefore, each impaired class had not accepted the plan, see id. §1129(a)(8).

---

[3] The Debtor operates a restaurant in the Fairmount section of Philadelphia. See Debtor's Fourth Amended Disclosure Statement Related to the Fourth Amended Plan of Reorganization at 7 (Docket Entry No. 207).

[4] Prior to confirmation, the Debtor filed the following proposed chapter 11 plans:

| | |
|---|---|
| Initial Plan of Reorganization | filed September 21, 2007 |
| Amended Plan of Reorganization | filed October 12, 2007 |
| Second Amended Plan of Reorganization | filed March 7, 2008 |
| Third Amended Plan of Reorganization - | filed June 25, 2008 |
| Fourth Amended Plan of Reorganization | filed July 10, 2008 |

See Docket Entry Nos. 101, 110, 135, 188, 206.

In connection with its §1129(a)(8) objection and as an explanation for its rejection of the Plan, Sovereign stated that it "ha[d] not agreed to accept treatment less favorable [than] that [to] which it [was] entitled . . . under its loan documents." Sovereign Objection to Confirmation at 3.

The confirmation hearing was held and concluded on November 5, 2008. See Docket Entry No. 229. At the hearing, Sovereign reaffirmed its position that, in its vote as a class 2 creditor, it had rejected the Plan. Consequently, the Debtor requested confirmation under 11 U.S.C. §1129(b). At this point in the confirmation hearing, even though all of its objections to confirmation remained relevant,[5] Sovereign did not press them, presenting no evidence and advancing no arguments in support of its Objection. Rather, Sovereign stated that if the court found the Plan feasible, it was "satisfied."[6] Effectively, Sovereign withdrew any objection it had to the Plan's modification of its rights in return for an enhanced plan default remedy provision it negotiated with the Debtor prior to the confirmation hearing.[7]

Based on the record the Debtor made at the hearing, the court confirmed the Plan under §1129(b). The confirmation order was dated December 24, 2008 and entered December 26, 2009 (Docket Entry No. 235).

---

[5] See id. §1129(b)(1) (permitting confirmation of a plan if all of the requirements of §1129(a) except §1129(a)(8) are met and if certain other requirements are satisfied).

[6] See N.T. at 16 (November 5, 2008) (Docket Entry No. 271) ("Ms. Clarke: "[W]ith the default provisions and remedies available to the Bank that will be included in the confirmation of the Plan, the bank is satisfied.").

[7] This enhanced default remedy is memorialized in the confirmation Order quoted below in Part II. B.

**B.**

Section 3.2 of the Confirmed Plan addresses Sovereign's secured claim. Section 3.2 of the Confirmed Plan states:

> **Class 2**.    **Secured Claim of Sovereign Bank**.  Class 2 is impaired.  Except as otherwise provided herein, the treatment and consideration to be received by Class 2 shall be in full settlement, satisfaction, release and discharge of its respective claims and liens. Class 2 is over secured. **The Class 2 Claim shall be set by agreement, or, if no agreement, by Court Order**. The Debtor has paid adequate protection payments of $10,000.00 per month since July, 2007. These payments shall be applied first to interest and then to principal. **The Class 2 Claim amount shall be determined by taking the pre-petition principal balance plus interest at the non-default contract rate[8] less adequate protection payments (the "Sovereign Secured Claim").**
>
> The Sovereign Secured Claim shall be paid in equal monthly installments of between $13,200.00 and $14,400.00. On or before twenty-four (24) months from the Effective Date, the Debtor shall satisfy the Class 2 Sovereign Secured Claim.
>
> The Debtor shall maintain insurance on the property and pay all real estate taxes as required by the pre-petition loan documents. Until satisfaction of the Class 2 Claim, the Class 2 creditor shall retain its security interests and mortgages.

(emphasis added).

At the November 5, 2008 confirmation hearing, the parties advised the court that, if the court concluded that the Plan should be confirmed under §1129(b), they had agreed upon certain revisions to §3.2 of the Plan. See n.7, supra. The Debtor also restated that it had not yet calculated the exact amount of the monthly instalment required by the first sentence of the second paragraph of §3.2 (i.e., "between $13,200.00 and $14,400.00"). The court then decided that, given the limited nature of the agreed modifications to §3.2, it would be more efficient to express those modifications in the confirmation Order rather than require the Debtor to file

---

[8]   The parties agree that the loan documents do not include a default interest rate.

another amended chapter 11 plan. The parties agreed that they would submit a proposed order for confirmation of the Plan and the confirmation hearing concluded.

The Debtor did not file the proposed confirmation order until December 17, 2004.[9] In relevant part, the confirmation Order provides:

> The Plan as modified herein this order is confirmed. The Debtor has made the following modifications to the Plan:
>
> a. Class 2 Sovereign Bank treatment is modified. Commencing on the Effective Date of the Plan, Class 2 will receive a monthly amount **between $13,200.00 and $14,400.00 as** determined by the court, **if necessary**, for twenty-four (24) months on account of its Secured Claim. After twenty-four (24) months, the Debtor will satisfy the Class 2 claim in full.[10]
>
> b. The Debtor will have a grace period of five (5) days to make the monthly payment to the creditor. If the Debtor has not made payment to the creditor by the fifth (5th) day, the creditor will send a letter to the Debtor and counsel to the Debtor notifying them of the Default. The Debtor will have an additional five (5) days to cure the default. If the Debtor does not cure the default after the sixth (6th) day, the creditor will be able to file a self-executing Certification of Default with a proposed order attached. The Debtor will not be entitled to a hearing and the proposed order will be entered by the Court at the Court's earliest convenience. After the bankruptcy case is closed, the Debtor will have a seven (7) business day grace period to cure any default. If no payment is received after the end of the seventh (7th) day, the Class 2 creditor will be able to start legal proceedings. Any notice of default or any action taken by the creditor while the bankruptcy case is open, shall also be served upon Fred Baker, Office of the United States Trustee.[11]

---

[9] See Docket Entry No. 217. The record does not reveal the reason for the delay.

[10] The court interlineated the bolded text of the confirmation Order. The phrase "between $13,200.00 and $14,400.00" was added to render the confirmation Order consistent with §3.2 of the Plan and the Debtor's representations at the confirmation hearing.

[11] The default remedy set forth in paragraph b. of the Order appears to have been the product of negotiations between the Debtor and Sovereign just prior to the November 5, 2008 confirmation hearing. See also n.6, supra.

Confirmation Order (emphasis added) (Docket Entry No. 235).

Thus, the Confirmed Plan provides for the Debtor to satisfy Sovereign's allowed secured claim by:

1. making monthly instalment payments to Sovereign for twenty-four (24) months following the effective date of the Confirmed Plan in an amount to be determined, but not less than $13,200.00 and no greater than $14,400.00 per month; and

2. satisfying the remaining indebtedness after the twenty-four (24) month period.[12]

Section 3.2 of the Plan, as modified by the confirmation Order, may leave or create a number of questions,[13] but the only issue presently before the court concerns the appropriate components of Sovereign's allowed secured claim.

---

[12] The Plan says that "on or before twenty-four (24) months from the Effective Date, the Debtor shall satisfy the Class 2 Sovereign Secured Claim." Plan §3.2 (emphasis added). However, the Order confirming the Plan states: "After twenty-four (24) months, the Debtor will satisfy the Class 2 claim in full." Confirmation Order (para a.) (emphasis added). Thus, the confirmation Order the Debtor submitted effected a slight change in the treatment of Sovereign's claim. It is unknown whether the change was intentional or the result of an error in drafting the proposed confirmation Order.

[13] For example, how is the amount of the post-confirmation monthly instalments the Debtor must pay Sovereign for up to twenty four (24) months (between $13,200.00 and $14,400.00) to be determined? In the (superseded) proposed Amended Plan filed on October 12, 2007, see n.4, supra, the Debtor proposed the payment be determined by using a twenty (20) year amortization of the allowed secured claim based on the contract interest rate. But that formula was removed from all subsequent plans and replaced with a statement of the amount of the monthly payment. In the Confirmed Plan, the $13,200.00 to $14,400.00 range is stated without any explanation how the amount will be set. Do the parties have an unmemorialized agreement to use the formula from the Amended Plan? If so, what rate of interest applies in doing the amortization analysis, considering that the contract rate is variable? See Exh. C-1. If not, what other method is established by the Confirmed Plan?

## C.

The Debtor listed Sovereign in its schedules as the holder of a secured claim in the amount of $1,600,000.00.  See Docket Entry No. 22.  Sovereign did not file a proof of claim, but in response to the Motion stated that its prepetition claim is $1,766.468.27.  See Sovereign's Response to the Debtor's Motion to Set Claim at 2 (Docket Entry No. 242).   Sovereign itemized its claim as follows:

| | |
|---|---:|
| Principal as of February 9, 2007 | $1,582,389.07 |
| Interest | 128,544.19 |
| Late fees | 25,003.01 |
| Attorneys fees | 30,532.00 |
| **Total claim** | **$1,766,468.27** |

Id.

It is unclear whether the attorney's fees and late charges included in the above itemization refer to prepetition amounts or both prepetition and postpetition amounts.[14]  Thus, the record is not clear regarding the amount of the postpetition, §506(b) attorney's fees and late charges at issue.  Whatever the amount may be, the parties cannot bridge their differences on the categorical question whether postpetition attorney's fees and late charges may be included in Sovereign's allowed secured claim, requiring a decision by this court.[15]

---

[14]     At the March 9, 2009 hearing, Sovereign's counsel testified that the postpetition attorney's fees at issue are approximately $30,000.00, but did not provide an estimate regarding the disputed late charges.  I cannot tell from her testimony whether the $30,000.00 in attorney's fees referenced in her testimony is included in the itemization in the text above or whether it is in addition to the amount set forth in the itemization.

[15]     Also, I observe that the parties presented only one of a number of potential issues that could arise in determining the exact amount of Sovereign's allowed secured claim.  The Debtor potentially could dispute the amount of every one of the other components of the claim (e.g., the amount due for: prepetition principal, prepetition late charges, prepetition attorney's fees, prepetition and

In short, the parties' immediate dispute appears limited to the qualitative question whether the Confirmed Plan restricts Sovereign's right to add postpetition/pre-confirmation attorney's fees and late charges under 11 U.S.C. §506(b) to the prepetition indebtedness for purposes of calculating its allowed secured claim.

The Debtor asserts that the terms of the Confirmed Plan address and govern the determination of Sovereign's allowed secured claim and that the Confirmed Plan does not provide for the addition of postpetition attorney's fees and late charges to Sovereign's claim. See 11 U.S.C. §1141(a); Jones v. Keene Corp., 933 F.2d 209, 214 (3d Cir. 1991). In response, Sovereign contends that the Confirmed Plan, properly interpreted, does not override its right, under §506(b), to include postpetition attorney's fees and late charges in its claim.

Thus, the specific issue before the court is the meaning of the Confirmed Plan.

### III.  THE PARTIES' CONTENTIONS

As quoted above in Part II. B., §3.2 of the Confirmed Plan consists of three (3) paragraphs. The first paragraph describes how Sovereign's allowed claim is to be determined. The second paragraph describes the proposed treatment of the allowed claim. The third paragraph is not directly relevant to the current issue.

The dispute in this matter concerns the meaning of the first paragraph of §3.2 of the

---

postpetition interest. While the parties have not been explicit on this point, I infer from the manner in which they have presented this contested matter that they have an agreement or believe that they can reach agreement on these amounts, provided they are given guidance whether postpetition attorney's fees and late charges may be included in the allowed secured claim. If not, a further hearing will be necessary.

9

Confirmed Plan.[16]  More specifically, the parties' dispute centers on the meaning of the fourth and seventh sentences of §3.2 ("the 4th Sentence" and "the 7th Sentence," respectively), both of which have been emphasized in the text of §3.2 quoted above in Part II. B.

### A.

In support of its position, the Debtor relies on the 7th Sentence of the Confirmed Plan, arguing that it provides the exclusive method for calculating Sovereign's allowed secured claim. The 7th Sentence instructs that the amount of Sovereign's allowed secured claim shall be determined by adding together the "pre-petition principal balance" and "interest at the non-default contract rate"[17] and then reducing that number by the postpetition adequate protection payments the Debtor made.

The Debtor suggests that by referring only to "interest" as a permissible component that may be added to the unpaid principal balance in calculating Sovereign's allowed secured claim, the 7th Sentence excludes all other possible charges cognizable under 11 U.S.C. §506(b) by negative implication – (i.e., attorney's fees and late charges).  Further, the Debtor maintains that §3.2 is unambiguous in expressing its intention to exclude postpetition attorney's fees and late

---

[16]    I will focus on the text of the Confirmed Plan, rather than the confirmation Order, because the Plan addresses the methodology for calculating the amount of the allowed secured claim, while the revisions in the confirmation Order address the treatment of the claim.

[17]    The 7th Sentence does not specify whether the "interest" to be added to the principal is prepetition interest (assuming that there was a prepetition default, after which interest accrued), postpetition interest (as authorized by 11 U.S.C. §506(b)) or both.  In the absence of any limitation in the provision, I read the reference to encompass both prepetition and postpetition interest to the extent allowable under §506(b).  I have no reason to believe that either party feels disagrees.

charges from the calculation of Sovereign's allowed secured claim.[18] The Debtor also argues that even if the provision is ambiguous, application of the proper principles of contract construction should cause the court to interpret §3.2 as negating Sovereign's right to invoke §506(b) to add postpetition attorney's fees and late charges to its claim.

At trial, the Debtor's bankruptcy counsel, Albert A. Ciardi III ("Mr. Ciardi"), testified that he assisted in drafting the Confirmed Plan and the prior filed plans. He pointed out, accurately, that what is quoted above as the 7th Sentence of the Confirmed Plan has consistently appeared in all of the plans the Debtor proposed, including the Confirmed Plan. He stated that the purpose of §3.2 of the Plan, as expressed in the 7th Sentence, was to fix the amount of Sovereign's claim and exclude charges as to which the Debtor was unaware or lacked proof. He described the provision as being designed to limit Sovereign's claim. He explained that the 7th Sentence defines the allowable substantive elements of Sovereign's claim and the 4th Sentence simply describes the procedure for determining the claim.

**B.**

Sovereign's position is that the 4th Sentence is the operative sentence.

Sovereign contends that the 4th Sentence provides a process for determining its allowed secured claim: negotiation between the parties followed by litigation in the event that the parties

---

[18] On February 23, 2009 (i.e., the date upon which the Motion was first scheduled for a hearing), counsel for both parties appeared and the Debtor argued that it was entitled to relief without an evidentiary hearing because the text of its Confirmed Plan was unambiguous. I rejected the Debtor's argument. Although the docket reflects only that the hearing was continued to March 9, 2009, in fact, I issued a verbal decision that §3.2 of the Confirmed Plan was ambiguous and that an evidentiary hearing was necessary ascertain its meaning.

could not reach agreement. Sovereign insists that it did not waive any of its rights under the loan documents or its right to enhance its prepetition claim with postpetition "interest . . . fees, costs, or other charges" provided for under the loan documents. 11 U.S.C. §506(b).

At trial, Sovereign's counsel, Sharil A. Clarke ("Ms. Clarke"), testified on the bank's behalf. Ms. Clarke testified that at no time prior to confirmation of the Plan did she have any discussion with the Debtor's counsel regarding waiver of Sovereign's right to collect late charges or attorney's fees. She stated that Sovereign never intended to waive its entitlement to collect the attorney's fees and late charges provided for by the loan documents and that she did not learn that the Debtor disputed Sovereign's entitlement to the charges and fees until Sovereign and the Debtor engaged in post-confirmation negotiations to fix Sovereign's allowed secured claim.

Ms. Clarke conceded that, at the confirmation hearing, Sovereign acquiesced to treatment less favorable in some respects than that provided for in the loan documents. For example, she agreed that confirmation of the Plan precluded Sovereign from exercising its right under applicable nonbankruptcy law to foreclose immediately on its collateral due to the existing default. Nevertheless, she insisted that the bank did not agree to waive its §506(b) rights. She stated that she relied on the negotiation/court resolution process set forth in the 4th Sentence for determination of Sovereign's claim and that she believed that the process set out in the 4th Sentence would be meaningless if the amount of the claim already was fixed by operation of the 7th Sentence. However, unlike Mr. Ciardi, she found it impossible to harmonize and give meaning to both provisions, stating that she thought that the 7th Sentence contradicted the 4th Sentence. She acknowledged that she did not focus on the tension between the 4th Sentence and the 7th Sentence before confirmation of the Plan. She thought the 4th Sentence controlled and that

her "inquiry really stopped at the [4th] sentence." She stated that she considered the 7th Sentence to be "fluff."

## IV.  APPLICABLE LEGAL PRINCIPLES

Recently, in In re Stuart, 402 B.R. 111 (Bankr. E.D. Pa. 2009), a chapter 13 case, I had occasion to state the legal principles that control the interpretation of a confirmed chapter 13 plan. The same principles apply in this chapter 11 case.

For brevity's sake, I summarize below the key principles:

- In construing a confirmed plan of reorganization, courts apply contract principles.

- The rules of contract interpretation applied are those of the state in which the plan was confirmed.

- Under Pennsylvania law, if the intent of the parties to a written contract is clear from the writing itself, there is no need to consider extrinsic evidence.

- If, however, a written contract is ambiguous, the parties may offer extrinsic evidence to clarify its meaning.

- A provision is ambiguous if it is reasonably susceptible to different meanings.

- In interpreting the meaning of an ambiguous contract provision, after consideration of the extrinsic evidence, the court may consider various principles or tools of contract interpretation.  See, e.g., Restatement (Second) of Contracts § 201- 206 (West 2009) ("the Restatement").

Stuart, 402 B.R. at 126-28; see generally In re Ginko Assocs., L.P., 2008 WL 3200713, at *12-13 (Bankr. E.D. Pa. Aug. 5, 2008) (discussing principles of contract interpretation under Pennsylvania law).

13

## V.  DISCUSSION

### A.

I reaffirm the view I expressed in court on February 23, 2008, that §3.2 of the Plan is sufficiently ambiguous to warrant the consideration of extrinsic evidence.  See n.18, supra.

It is difficult to understand the relationship between the 4th Sentence and the 7th Sentence based solely on the text.  If, as the Debtor contends, the formula for calculation of Sovereign's allowed secured claim is fixed unambiguously by the 7th Sentence, why have a separate sentence in §3.2 that states that the claim "shall be set by agreement," thereby implying the need for future negotiations regarding the claim?  As the Debtor suggests, the purpose of the negotiations may have been to try to resolve disputes on a limited subject:  the application of the formula provided by the 7th Sentence (i.e., the liquidation of the actual amount of the prepetition indebtedness and of the actual amount of the postpetition charges authorized by the 7th Sentence to be included in Sovereign's claim and the proper application of the adequate protection payments the Debtor made).  However, this is not fully apparent from the face of the writing because the text of the 4th Sentence does not describe the scope of the negotiations it references.  If the 4th Sentence is limited to negotiations for the purpose of implementing the 7th Sentence, the 4th Sentence simply could have been omitted.  The presence of the 4th Sentence at least implies the possibility that more is "on the table" for negotiation than merely the implementation of the 7th Sentence-formula.

Further, considering the issue from the other direction, if the 4th Sentence was designed to commit the parties to a plenary negotiation process to try to establish Sovereign's allowed secured claim by agreement without any limitation, then why include the 7th Sentence?  At a

minimum, Sovereign's view that its right to negotiate unqualifiedly concerning the categories of charges to be included in its claim is not expressed unambiguously in §3.2 of the Plan. At best, the text leaves open the possibility that the negotiations might result in an expansion of the components to be included in the calculation of the claim beyond those already identified in the 7th Sentence.

In short, had either the 4th Sentence or the 7th Sentence been omitted from §3.2, it is unlikely that there would be a dispute whether Sovereign could include late charges and postpetition attorney's fees in its allowed secured claim. The presence of both provisions creates a sufficient ambiguity to justify consideration of extrinsic evidence regarding the negotiation (if any) and the drafting of §3.2, as well as any other relevant facts.

**B.**

As it turned out, the extrinsic evidence the parties offered at the March 9, 2009 hearing shed little light on the meaning of the two (2) sentences in §3.2 of the Plan.

In their testimony, neither Mr. Ciardi nor Ms. Clarke referenced any negotiations between the parties regarding the methodology to be used to compute Sovereign's allowed secured claim. I infer that the parties had active negotiations on some issues related to Sovereign's treatment in the reorganization plan, most notably the plan default remedies available to Sovereign,[19] but never discussed the methodology for computing the allowed secured claim as set forth in the 7th Sentence of §3.2 of the Plan prior to the confirmation hearing. It appears that the Debtor believed that the 7th Sentence, proposed in every plan the Debtor filed in the case, restricted

---

[19] See Part II. B., supra.

Sovereign's rights under 11 U.S.C. §506(b) and saw no reason to discuss the provision further unless and until Sovereign raised the subject. Sovereign did not raise the subject because it believed that the 4th Sentence of the Plan left open all issues related to the calculation of its allowed secured claim for further negotiation after confirmation, probably without a full appreciation of the import of the 7th Sentence.[20]

Thus, as in Stuart, the court must interpret an ambiguous plan provision by reference to little else than the words of the plan itself.[21] However, unlike Stuart, after applying the relevant principles of contract interpretation, I do not find the litigants' competing arguments to be in equipoise. See Stuart, 402 B.R. at 132-33 (applying the doctrine of contra proferentem ("against the offeror") as a last resort).

---

[20] It appears that had Sovereign focused on the meaning of 7th Sentence, it may have pressed an objection to confirmation based on the Debtor's proposed modification of its rights under 11 U.S.C. §506(b). See generally 11 U.S.C. §1129(a)(1) (to be confirmed, a plan must comply with the applicable provisions of title 11). I express no view on the merits of such an objection.

[21] As noted earlier, at the confirmation hearing, the Debtor advised the court that the Debtor would make post-confirmation payments to Sovereign in the twenty-four (24) months following the effective date of the Confirmed Plan and that those payments would be in an amount between $13,200.00 and $14,400.00, but that the exact amount was not yet determined. The parties have never explained why they could not determine the exact amount of the payments by the date of the confirmation hearing. Perhaps, the parties had not yet commenced (or at least, not completed) negotiations regarding the amount and/or components of Sovereign's allowed secured claim. At the hearing on the Motion, however, the parties did not develop the record on this point. Accordingly, there is no evidence of any pre-confirmation negotiations regarding the disputed charges. Had such negotiations taken place and had Sovereign expressed its view that it was entitled to include postpetition attorney's fees and late charges in its allowed secured claim and had the Debtor demurred and suggested that the parties defer further discussion of the issue until after confirmation, Sovereign's interpretation of §3.2 of the Plan might find further support in Restatement §201(2) (where parties attach different meanings to a term, it is interpreted in accordance with the meaning attached to one of them if at the time the agreement was made, that party did not know of any different meaning attached by the other and the other knew the meaning attached by the first party).

## C.

I conclude that standing alone and without reference to the 4th Sentence, the 7th Sentence proposes to restrict Sovereign's rights under 11 U.S.C. §506(b). By referencing one component in §506(b) that permits a creditor to enhance its allowed secured claim (i.e., postpetition interest) and not referencing other types of charges set forth in §506(b) (i.e., postpetition attorney's fees and late charges), the 7th Sentence expressed the Debtor's intent to exclude the omitted charges from Sovereign's allowed secured claim. See Commw., Dep't of Transp. v. Mosites Constr. Co., 494 A.2d 41, 43 (Pa. Commw. Ct. 1985) (rule of statutory construction that "the mention of particular items implies the purposeful exclusion of other items of the same general character" is also applicable to ascertaining the intent of parties to a contract); see also Henderson v. Morrone, 214 Fed. Appx. 209, at *3 (3d Cir. 2007) (nonprecedential).

On the present record, the 7th Sentence can be harmonized with the 4th Sentence by accepting the Debtor's suggested interpretation: that the 7th Sentence defines the methodology for computing Sovereign's allowed secured claim and the 4th Sentence speaks only to the procedure for dispute resolution. This interpretation gives at least some meaning to all of the provisions of §3.2, which is a preferred outcome. See Restatement §203(a).[22] It also gives

---

[22] Even so, it remains difficult to understand what purpose the 4th Sentence serves and whether it has any legal force. It merely commits the parties to engage in negotiations before going to court. Thus, the 4th Sentence seems to do no more than describe the process that frequently occurs in legal disputes – the parties try to resolve their issues and, if unsuccessful, request a judicial determination. In the context of the claims allowance in a bankruptcy case, it does not appear to add anything to the applicable rules of court, see Fed. R. Bankr. P. 3001, 3002, 3007. To the extent that I am suggesting that the 4th Sentence may be surplusage, my interpretation is in tension with the policy preference against interpreting contract provisions to be surplusage, see Restatement §203(a). But that preference is not absolute. See id., comment b. ("preference for an interpretation which gives meaning to every part of an agreement does not mean that every part is assumed to have legal consequences"); see generally Lamie v. U.S. Trustee, 540 U.S. 526, 536, 124 S. Ct. 1023, 1031 (2004) ("our preference for avoiding surplusage constructions is not absolute"). Further, the parties already agree that at least one

greater weight to the provision that is more specific to the issue at hand in that the 7th Sentence directly addresses the categories of charges to be included in Sovereign's allowed secured claim while the 4th Sentence addresses the more general subject of dispute resolution.  See Restatement §203(c).  The Debtor's interpretation is also superior because, as Sovereign's counsel acknowledged in her testimony, Sovereign's interpretation of §3.2 effectively reads the 7th Sentence out of the Plan.[23]

For these reasons, and In light of all of the circumstances, see Restatement §202(1), I interpret §3.2 of the Plan to restrict Sovereign's right to enhance its allowed secured claim under 11 U.S.C. §506(b).  As set forth in the 7th Sentence, Sovereign may include postpetition interest at the contract rate to the prepetition indebtedness in calculating its claim, but may not include postpetition attorney's fees and late charges.

## VI.  CONCLUSION

Having determined the narrow issue presented by parties regarding the meaning and effect of §3.2 of the Confirmed Plan, I will schedule an additional hearing to ensure that, if the parties are unable to agree on the amount of Sovereign's claim and the amount of the post-confirmation monthly payment due to Sovereign under the Plan, those issues can be resolved

---

other provision – the reference to a "non-default" interest rate – is surplusage.  See n.8, supra.  In any event, the surplusage "problem" applies to both parties' interpretations of the 4th Sentence.

[23]     This conclusion is not inconsistent with my earlier conclusion that, when read together, the 4th Sentence and 7th Sentence are ambiguous.  Read together, they create some uncertainty, but without persuasive extrinsic evidence to suggest that the 4th Sentence was intended to have a broader effect than appears from its text, the more natural interpretation of the two (2) provisions is to give effect to the more specific 7th Sentence.

expeditiously.

    An Order consistent with this Memorandum will be entered.

Date: <u>May 29, 2009</u>

                                            **ERIC L. FRANK**
                                            **U.S. BANKRUPTCY JUDGE**